UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| JARED VAN PELT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GUILD MORTGAGE COMPANY,<br><br>    Defendant. | No. 1:21-CV-068-H |

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS AMENDED COMPLAINT**

    The Court previously highlighted the inadequacy of the Van Pelts' pleadings with respect to the applicability of the discovery rule and dismissed their original complaint without prejudice. Guild seeks dismissal of the amended complaint, arguing that all claims are time-barred. The Van Pelts respond that the discovery rule applies, tolling the statute of limitations until the date they discovered defects—including the lack of access to the crawl space—in their home's foundation. Taking their well-pleaded allegations as true, the Court concludes that the Van Pelts should have discovered the lack of access to the crawl space prior to closing. The Van Pelts' own inspection report stated that there was no access to the crawl space, and they concede that, had they known there was no access, they may have had reason to inspect the foundation further. The Van Pelts relied on an appraisal report not intended for their use, and they signed a separate document acknowledging that the appraisal was not a warranty of the value or condition of the property. The Van Pelts have tried twice and failed twice to show that the statute of limitations has not expired. Therefore, the Court grants Guild's Motion to Dismiss (Dkt. No. 20) and dismisses the case with prejudice.

1.  **Factual and Procedural Background**

    A.  **Factual Background**

Guild Mortgage Company provides Fair Housing Administration–insured mortgages to its customers. Dkt. No. 19 ¶ 5. In the fall of 2016, plaintiffs Jared and Adriene Van Pelt sought to purchase a home in the Abilene, Texas area. *Id.* After locating a property they wished to purchase, the Van Pelts submitted an application to Guild for an FHA-insured mortgage. *Id.* "As part of the process of purchasing their home, on or about November 30, 2016, Plaintiffs obtained a property inspection, which was summarized in a Property Inspection Report." *Id.* ¶ 6. The inspection report states in relevant part:

> Comments: Did not inspect crawl space because there is no accessible opening in structure.
> (If all crawl space areas are not inspected, provide an explanation.)
> Crawl Space inspected from: Not inspected, no access to crawl space.
> Performance Opinion:
> ☑ At this time, the foundation appears to be supporting the structure and immediate significant repair needs are not evident
> ☐ Prior to closing, the foundation should be inspected by a qualified structural engineer, familiar with the soils and construction methods of the region, in order to determine if permanent repairs are required.
>
> Additional Notes (An opinion on performance is mandatory): In my opinion, the foundation appears to be functioning as intended.

*Id.* at 22.

In addition, as part of its FHA-insured mortgage-underwriting process, Guild obtained an appraisal of the property on December 9, 2016. *Id.* ¶ 7. The appraisal has a checked box next to the words "Crawl Space" in the "Foundation" section, and the appraiser indicated that "[t]he crawlspace was inspected to the fullest extent possible per directions of Handbook 4000.1." Dkt. No. 22 at 3, 10.

| Foundation | |
|---|---|
| ☐ Concrete Slab | ☒ Crawl Space |
| ☐ Full Basement | ☐ Partial Basement |
| Basement Area | 0 sq.ft. |
| Basement Finish | 0 % |
| ☐ Outside Entry/Exit | ☐ Sump Pump |
| Evidence of  ☐ Infestation  n/a | |
| ☐ Dampness | ☐ Settlement |
| Heating  ☒ FWA  ☐ HWBB  ☐ Radiant | |
| ☐ Other | Fuel  Electricity |
| Cooling  ☒ Central Air Conditioning | |
| ☐ Individual | ☐ Other |

(Dkt. No. 22 at 3)

Furthermore the "No" box is checked in response to the question, "Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?" *Id.* at 3. In addition, the appraisal states in relevant part:

> INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.
> INTENDED USER: The intended user of this appraisal report is the lender/client.

*Id.* at 6.

The Van Pelts allege that, based on the appraisal, Guild "represented to [p]laintiffs that the Van Pelt Home appraised at a value to secure a mortgage in the amount of $146,301.00 at an annual interest rate of 4.25%." Dkt. No. 19 ¶ 7. And the Van Pelts allege that they relied directly on Guild's valuation when they entered into the mortgage and purchased the home on January 17, 2017. *Id.* ¶ 8. Moreover, the Van Pelts allege that, "[b]ased on the Inspection Report, Plaintiffs had no reason to verify the accuracy of the Appraisal, particularly as it applied to the foundation of the Van Pelt Home," and

– 3 –

"Plaintiffs justifiably relied on the Appraisal regarding the value of the Van Pelt Home and had no reason to inspect the condition of the foundation at any time." *Id.*

In March 2019, the Van Pelts tunneled underneath the property to access the crawl space to repair the home's plumbing and septic system. *Id.* ¶ 9. Concerned about the lack of access, they reviewed Guild's appraisal, in which the appraiser indicates that "[t]he crawlspace was inspected to the fullest extent possible," but unlike their own report, it says nothing about the lack of access to the crawlspace. *Id.* ¶ 9; Dkt. No. 22 at 10.

In June 2019, the Van Pelts completed the tunneling and discovered that the property "had no foundation at all, or at best had an inadequate foundation with part of one wall supported by stacked rocks and otherwise resting on the ground." *Id.* ¶ 10 (emphasis omitted). Upon further investigation, they found that most of the floor joists were rotted and needed to be replaced; the house had no foundation or crawl space; and the property "contained physical deficiencies and adverse conditions affecting the livability, soundness and structural integrity of the property, as well as creating the health and safety issues." *Id.* The Van Pelts allege that Guild recklessly ignored Department of Housing and Urban Development requirements for appraisals for FHA-insured financing, which resulted in an overvaluation of and their overpayment for the property. *Id.*

**B.     Procedural Posture**

The Van Pelts filed this action on February 26, 2021 in the 42nd District Court for Callahan County, Texas. Dkt. No. 1-3 at 1. Guild properly removed the case to this Court and, not long after, filed its first motion to dismiss. Dkt. Nos. 1; 6.

The Court granted Guild's motion and dismissed, without prejudice, all claims—fraudulent inducement, fraud by nondisclosure, breach of fiduciary duty, deceptive trade

– 4 –

practices—based on findings that the statute of limitations had run with respect to all claims and that the discovery rule had not been adequately pled. Dkt. No. 18 at 1, 14–15. Subsequently, the Van Pelts filed an amended complaint—the current operative pleading—which contained, among the others, new allegations concerning their own inspection and due diligence concerning the house. *See* Dkt. Nos. 19 ¶¶ 6, 8, 11. The amended complaint did not replead the breach-of-fiduciary-duty claim.

Guild filed a motion to dismiss the amended complaint (Dkt. No. 19) arguing that: (1) the applicable statute of limitations had lapsed; (2) the Van Pelts' claims fail to satisfy pleading standards; and (3) the Van Pelts' alleged reliance on the appraisal was not justified. Dkt. No. 20 at 2. Response and reply briefs have been filed, so the motion is ripe for resolution. Dkt. Nos. 24; 27.

2.  **Legal Standards**

    A.  **Governing Law**

Because jurisdiction is based on diversity (*see* Dkt. No. 19 at 2), the injury occurred in Texas (*see* Dkt. No. 19 at 2), and the fraud and DTPA claims are all based in state law, Texas law applies to the substantive law governing these claims, but federal law applies to procedural matters. *See DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991); *see also Hanna v. Plumer*, 380 U.S. 460, 465–67 (1965); *Erie R.R. v. Tompkins*, 304 U.S. 64, 79–80 (1938). Where a federal procedural law squarely governs a purely procedural matter—such as pleading standards under Federal Rules of Civil Procedure 8, 9, and 12—federal law governs. *See Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 n.4 (5th Cir. 1994); *Hanna*, 380 U.S. at 471 (1965).

Here, only Texas substantive law governs the claims, there are no dueling statutes of limitations, and the case is before a Texas federal court. Thus, Texas law applies as to the statutes of limitations for each claim and related law governing the tolling of limitations periods. *See Allen v. Sherman Operating Co., LLC*, 520 F. Supp. 3d 854, 860 (E.D. Tex. 2021) (citing *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945)).

### B. Pleading Standard & Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, a complaint must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Defendants can challenge the sufficiency of a complaint through a motion to dismiss under Rule 12(b)(6). In evaluating a 12(b)(6) motion, the court must accept all well-pleaded facts as true and may rely on "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). A complaint may be dismissed under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense—such as lapse of the statute of limitations—that will bar the award of any remedy. *See EPCO Carbon Dioxide Prods. Inc. v. JP Morgan Chase Bank, N.A.*, 467 F.3d 466, 470 (5th Cir. 2006)

("Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004).

Additionally, Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to "state with particularity the circumstances constituting fraud." The Fifth Circuit interprets Rule 9(b) strictly by "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). Allegations about conditions of the mind, however, may be pled generally. Fed. R. Civ. P. 9(b).

### C. Discovery Rule and Tolling the Statute of Limitations

"The discovery rule provides that the statute of limitations will run not from the date of the defendant's wrongful act or omission, but from the date that the nature of the injury was or should have been discovered." *K3C Inc. v. Bank of America, N.A.*, 204 F. App'x 455, 462 (5th Cir. 2006) (citing *Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex. 1977)) (cleaned up). In other words, "[t]he discovery rule delays accrual [of the statute of limitations] until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (internal quotation marks and citation omitted). "Texas courts will toll the statute of limitations if the injury is both inherently undiscoverable and objectively verifiable." *K3C*, 204 F. App'x at 462 (citing *HECI Explor. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)). "An injury is inherently undiscoverable where it is by nature unlikely to be

discovered within the prescribed limitations period despite due diligence by the plaintiff." *Id.* (internal quotation marks omitted). The touchstone of whether an injury is a relevant injury that will toll the statute of limitations is whether the injury would put the plaintiff on notice that he had been injured. *See Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 567 (Tex. App.—Dallas 2014, pet. denied); *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008).

"The discovery rule is 'a very limited exception to statutes of limitations' and applies 'only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable.'" *Pressure Sys. Int'l, Inc. v. Sw. Rsch. Inst.*, 350 S.W.3d 212, 216 (Tex. App.—San Antonio 2011, pet. denied) (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). And Texas courts recognize that due diligence requires parties to a real estate contract to protect their own interests and that there is nothing preventing them from obtaining their own independent appraisal. *See, e.g.*, *Wagner & Brown*, 58 S.W.3d at 736–37. Courts have thus concluded that the discovery rule does not apply when the plaintiff fails to allege that he conducted independent due diligence and that the injury was inherently undiscoverable. *See, e.g.*, *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011) (holding that the discovery rule did not apply because plaintiffs could have timely discovered underpayments and injury through exercise of due diligence).

The time when plaintiffs knew or should have known of the injury is generally a question of fact reserved for the factfinder. *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 94 (Tex. 2004); *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). "However, the commencement of the limitations period may be determined as a matter of

law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs*, 974 S.W.2d at 44.

3. Analysis

    A. **The Court previously found that the Van Pelts' fraud claims and DTPA claims were adequately pled and need not revisit this issue.**

In the order granting Guild's first motion to dismiss, the Court found that Van Pelts had adequately pled all of their claims except for their breach-of-fiduciary-duty claim. Dkt. No. 18 at 9–10. The Van Pelts have not repled the breach-of-fiduciary-duty claim, *see* Dkt. No. 19, so it is no longer a part of this case. Since the Van Pelts cleared the 12(b)(6) bar on their first attempt and have only bolstered their claims, *see id.*, the Court does not address Guild's second argument that the Van Pelts' claims fail to satisfy pleading standards. The only question for the Court is whether the Van Pelts claims, despite stating a claim, are nevertheless barred by the applicable statutes of limitation.

    B. **The Van Pelt's claims are time-barred.**

As a preliminary matter, the Court notes that the bulk of the factual matter in this case is contained in three documents: the Van Pelts' inspection report, Guild's appraisal, and the parties' closing documents. The Van Pelts' inspection report is attached to and incorporated into the amended complaint by reference. *See* Dkt. No. 19 at 2–3, 14–30. Guild's appraisal and the closing documents are not attached to the amended complaint, but they are incorporated by reference. *See id.* at 3–4. Therefore, the Court may consider these documents in evaluating Guild's motion to dismiss. *See Wolcott*, 635 F.3d at 763.

        i. **Unless the discovery rule applies and tolls the respective statute of limitations for each claim, the Van Pelts' claims are time-barred.**

In its prior order of dismissal, the Court found that the claims for fraudulent inducement, fraud by nondisclosure, and violation of the DTPA were subject to four-, four-,

– 9 –

and two-year statutes of limitations, respectively. Dkt. No. 18 at 8–9. Here, the alleged fraudulent actions and misrepresentations or omissions by Guild occurred sometime between fall 2016 and closing on January 17, 2017. Dkt. No. 19 ¶¶ 5, 8. The Van Pelts filed this action on February 26, 2021 in state court—a little over four years from the closing date. Dkt. No. 1-3 at 1. Therefore, unless the discovery rule applies, the Van Pelts' claims are barred by their respective statute of limitations.

> ii. **Reasonable minds cannot differ that that the Van Pelts should have discovered the lack of access to the crawl space prior to closing.**

The central question in determining whether the discovery rule applies is: When did or when should the Van Pelts have discovered the deficiencies in the crawl space and the foundation? *See K3C*, 204 F. App'x at 462 (citing *Weaver*, 561 S.W.2d at 793–94). The Van Pelts allege that that they discovered the complete lack of access to the crawl space beneath their home in March 2019, when they began repairs to their septic system. Dkt. No. 19 ¶ 9. They discovered that the house "had no foundation at all, or at best had an inadequate foundation" in June 2019, when they finished tunneling underneath the house. *Id.* ¶ 10. Based on the Van Pelt's proposed discovery date of March 2019, none of their claims would be time-barred.

But these accrual dates apply and displace the earlier dates in 2016 and 2017—the dates of the reports and closing—only if the injury was "both inherently undiscoverable and objectively verifiable." *K3C*, 204 F. App'x at 462 (citing *HECI*, 982 S.W.2d at 886). Guild agrees that the Van Pelts' injury is objectively verifiable. *See* Dkt. Nos. 20; 21. The sole question, then, is whether the injury was inherently undiscoverable—"unlikely to be discovered within the prescribed limitations period despite due diligence by the plaintiff." *K3C*, 204 F. App'x at 462 (citing *HECI*, 982 S.W.2d at 886).

Before analyzing this question, the Court must first identify the relevant injury. Guild's motion to dismiss suggests two: the lack of access to the crawl space and the inadequacy of the foundation. Dkt. No. 21 at 11. The Van Pelts suggest that the relevant undiscoverable injury is the "lack of a foundation." Dkt. No. 24 at 3, 5–7. The lack of a foundation or an inadequate foundation under a home would certainly constitute a fact that would have put the Van Pelts on notice that they had been injured. As to the lack of access to the crawl space: It is unknown whether the building code in Clyde, Texas—the location of the Van Pelt's home—requires access to crawl spaces. But the Texas Department of Housing & Community Affairs' Minimum Construction Standards require access to and venting of crawl spaces. Tex. Dep't of Hous. & Cmty. Aff., *Texas Minimum Construction Standards* § 3.5 (Jan. 1, 2015), https://www.tdhca.state.tx.us/single-family/training/docs/14-TMCS.pdf. And given that both the Van Pelts' inspection report and Guild's appraisal highlight the access to the crawl space as an element of determining a foundation's soundness, the Van Pelts would reasonably be put on notice of injury by discovering a lack of access to the crawl space beneath their home.

Most critically, the Van Pelts concede that "[h]ad Plaintiffs known at the time that there was no crawl space, or at best [a] wholly inadequate crawl space from which to view the foundation, the Plaintiffs may have had a reason to inspect the foundation further." Dkt. No. 19 ¶ 8. And the Van Pelts allege they have suffered injuries stemming from their lack of access to the crawl space: Because of this lack of access, they had to tunnel underneath their home to access the crawl space in order to perform repairs. *Id.* ¶ 9. Therefore, for purposes of the Court's analysis, the Court treats the lack of access to the crawl space, in addition to the lack or inadequacy of the foundation, as relevant injuries.

Either of these injuries, if inherently undiscoverable and objectively verifiable, would toll the statute of limitations until discovered.

Only if reasonable minds cannot differ that the injuries were or were not inherently undiscoverable and objectively verifiable can the Court determine, as a matter of law, the application *vel non* of the discovery rule. *See Childs*, 974 S.W.2d at 44. Otherwise, the Court must reserve the question for resolution by the trier of fact. *See id.* Taking all of the Van Pelts' well-pleaded allegations as true, several facts militate in favor of a finding that reasonable minds cannot differ that the Van Pelts should have discovered the lack of access to the crawl space sometime prior to January 17, 2017—the closing date.

> a. **The Van Pelts' inspector stated he did not inspect and had no access to the crawl space, and the Van Pelts did not independently try to ascertain whether there was access.**

The Van Pelts' inspection report—completed November 30, 2016—states that the inspector "[d]id not inspect [the] crawl space because there is no accessible opening in [the] structure." Dkt. No. 19 at 22. Moreover, the report clearly indicates that there was "no access to [the] crawl space." *Id.* In other words, at minimum, the Van Pelts knew or should have known on November 30, 2016 that the foundation was not visually inspected from the crawl space and that there was no access to the crawl space. The inspector's opinion that "the foundation *appears* to be supporting the structure and immediate significant repair needs are not evident" indicates the extent of the inspector's opinion based on a visual inspection of the house without physically accessing the crawl space because there was no access to it. *Id.* (emphasis added).

The Van Pelts emphasize the fact that the inspector did not check the box stating that "the foundation should be inspected by a qualified structural engineer . . . in order to

determine if permanent repairs are required." *Id.*; *see* Dkt. Nos. 19 ¶ 6; 24 ¶¶ 12–13, 15. But again, this opinion is based on the inspector's inspection of the house without the benefit of physically accessing the crawl space. And although not a dispositive fact, the inspection report contains a disclaimer that states:

> THIS PROPERTY INSPECTION IS NOT A TECHNICALLY EXHAUSTIVE INSPECTION OF THE STRUCTURE, SYSTEMS OR COMPONENTS. The inspection may not reveal all deficiencies. A real estate inspection helps to reduce some of the risk involved in purchasing a home, but it cannot eliminate these risks . . . .

Dkt. No. 19 at 15. The disclaimer is boilerplate and generally warns the Van Pelts against relying on the inspection report to avoid all doubts about structural deficiencies in the house. But it is another fact weighing in favor of finding that the Van Pelts knew or should have known that there was no access to the crawl space and that the foundation was not visually inspected.

Texas courts recognize that parties to a real estate contract must protect their own interests. *See, e.g.*, *Wagner*, 58 S.W.3d at 736–37. While there might be some question of fact as to whether a reasonable person would have recognized a need to conduct further inquiries regarding the foundations of a house based on a report indicating that there was no access to the crawl space, the Van Pelts concede that "[h]ad Plaintiffs known at the time that there was no crawl space, or at best [a] wholly inadequate crawl space from which to view the foundation, the Plaintiffs may have had a reason to inspect the foundation further." Dkt. No. 19 ¶ 8. Therefore, by their own admission, the Van Pelts recognize that the inspector's report of a complete lack of access to the crawl space should have put them on notice of the need for further due diligence regarding the foundation.

Finally, nothing in the pleadings indicates that the Van Pelts tried to ascertain themselves whether there was access to the crawl space. It is common knowledge that home buyers will visually inspect a house before they purchase it. Furthermore, crawl-space-access wells, doors, and vents are common features in a house and are generally easily visible. That the Van Pelts, after receiving notice that the house had no access to the crawl space, failed to independently determine whether there was access is another fact weighing against them.

          **b.**      **The purpose of the appraisal was to protect Guild's interests, not to insure the Van Pelts against any structural deficiencies in the property.**

The Van Pelts seem to regard Guild's appraisal as something akin to a seller's warranty that the property is free of defects. *See id.* ¶¶ 8, 11. However, the appraisal clearly indicates that its "intended user" is Guild, "the lender," and that "[t]he intended use of th[e] appraisal report is for the lender/client to evaluate the property that is the subject of th[e] appraisal for a mortgage finance transaction." Dkt. No. 22 at 6. The purpose of the appraisal is for Guild and possibly the Federal Housing Administration to protect their collateralized interests in underwriting and insuring the loan, respectively. And while this language does not preclude the Van Pelts from examining the appraisal as an additional datapoint in their pre-closing due diligence, the appraisal is not even close to guaranteeing the structural soundness of the house to the buyer in any way.

Further, on December 27, 2016, three weeks prior to closing, the Van Pelts signed the "FHA Amendatory Clause for Sales Contract," which states in relevant part:

> The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the property. The purchaser

should satisfy himself/herself that the price and the condition of the property are acceptable.

*Id.* at 25.  Thus, the Van Pelts acknowledged that the appraisal and its estimated valuation were not in any way a warranty of the value or condition of the property.

### c. Guild's appraisal never affirmatively indicates the existence of access to the crawl space.

Guild's appraisal does not affirmatively state that there is access to the crawl space.  Despite having checked the box next to "Crawl Space" in the "Foundation" section, the appraiser somewhat cryptically indicates "[t]he crawlspace was inspected to the *fullest extent possible* per directions of Handbook 4000.1." *Id.* at 3, 10 (emphasis added).  HUD Handbook 4000.1.D.3m requires the following:

> m. Crawl Space Observation Requirements
> The Appraiser must visually observe areas of the crawl space and notify the Mortgagee of the deficiency of [Minimum Property Requirements] and [Minimum Property Standards] when the crawl space does not satisfy any of the following criteria:
> . . .
> If there is evidence of a deficient condition, the Appraiser must report this condition and render the appraisal subject to inspection and repairs, if necessary.
>
> In cases where access through a scuttle is limited, and the Appraiser cannot fully enter the crawl space, the insertion of at least the head and shoulders of the Appraiser will suffice.  If there is no access to the crawl space but there is evidence of a deficient condition (such as water-stained subflooring or smell of mold), the Appraiser must report this condition and the Mortgagee must have a qualified third party perform an inspection.
>
> *If there is no access, the Appraiser must report the lack of accessibility to the area in the appraisal report.*  There is no requirement to cut open walls, ceilings or floors.

U.S. Department of Housing & Urban Development, *Handbook 4000.1, FHA Single Family Housing Policy Handbook*, 4000.1.D.3.m (Nov. 18, 2020) (emphasis added), https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh_Update9.pdf.  Thus, under Section

– 15 –

4000.1.D.3.m, there is no requirement that the appraiser enter the crawl space. *See id.* But the appraiser must report the lack of access to a crawl space, if any. *Id.*

Guild's appraiser did not report the lack of access to the crawl space. *See* Dkt. No. 22 at 3–24. But to the extent that Guild, by its appraiser, violated the requirement of reporting a lack of access to the crawl space, both parties agree that HUD regulations do not create a private cause of action. Dkt. Nos. 7 at 6; 11 at 5; *see also Baker v. Countrywide Home Loans Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *3 (N.D. Tex. June 24, 2009) (Boyle, J.) (recognizing that the FHA and HUD regulations do not give rise to a private cause of action for their violation). And the Van Pelts do not allege that a federal statute or regulation entitles them to rely on the accuracy of an FHA-insured loan appraisal.

More importantly, the appraisal report never affirmatively indicates the existence of access to the crawl space. The first page lists under the "Foundation" section check-box options for "Concrete Slab," "Full Basement," "Crawl Space," and "Partial Basement." Dkt. No. 22 at 3. All of these words indicate different variations of housing foundations. Thus, the appraiser merely indicated that the *type* of foundation for the house is a "Crawl Space" by checking the box next to those words. *Id.* And the appraiser's comment that the "[t]he crawlspace was inspected to the *fullest extent possible*" strictly neither confirms nor denies the existence of access to the crawl space. *Id.* at 10. The Van Pelts highlight the fact that the "No" box is checked in response to the question, "Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?" *Id.* at 3; *see* Dkt. No. 19 ¶ 8. But again, this response says nothing about the existence of access *vel non* to the crawl space.

Thus, given the inspection report—which affirmatively indicates a lack of access to the crawl space—and the appraisal—which neither confirms nor denies the same—the Van Pelts should have realized, prior to closing that the house lacked access to the crawl space.

### d. The Van Pelts agreed to purchase the home "as is."

The sale contract indicates that the "Buyer accepts the Property As Is." Dkt. No. 22 at 29.  And the definition of "as is" in the sale contract indicates that it "means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract." Dkt. No. 22 at 29.  Texas courts recognize that a valid "as is" clause in a contract means that "the buyer holds all the risk as to the quality of the property and any loss." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings*, LLC, 572 S.W.3d 213, 233 (Tex. 2019) (citing *Prudential Ins. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)).  And the Van Pelts have not challenged the validity of the "as is" clause.  "By agreeing to purchase something 'as is', a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong." *Prudential*, 896 S.W.2d at 161 (citing *Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv. Inc.*, 572 S.W.2d 308, 313 (Tex. 1978)).

The inclusion of this "as is" clause in the sale contract indicates that the Van Pelts acknowledged their responsibility for ascertaining the condition of the property and bore any associated risks except for those subject to other warranties.  *See* Dkt. No. 22 at 29.  And the Van Pelts do not allege that Guild made any warranty as to the quality or condition of the property.  The Van Pelts' agreement to purchase the home "as is" is another factor— though minor—in favor of a finding that they should have been aware of the need for further due diligence regarding the lack of access to the crawl space and the foundation.

– 17 –

> e. **Reasonable minds cannot differ that the Van Pelts should have discovered the lack of access to the crawl space sometime prior to closing.**

Because the case is at the motion-to-dismiss stage, the Van Pelts are entitled to a generous construction of their pleadings, and the Court must accept all well-pleaded facts as true. *See In re S. Recycling, L.L.C.*, 982 F.3d 374, 381 n.1 (5th Cir. 2020); *Iqbal*, 556 U.S. at 678. Because there is no dispute concerning the contents of the inspection report or appraisal, the case turns on how liberally the Court construes the discovery rule's standards. The discovery rule is "a *very limited* exception to statutes of limitations," and Texas courts "have condoned its use only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown*, 58 S.W.3d at 734 (emphasis added). And the Supreme Court of Texas has noted "the justifications [it] ha[s] offered for deferring accrual [under the discovery rule] have been diverse, somewhat inconsistent, and often *overly broad*." *S.V. v. R.V.*, 933 S.W.2d 1, 5 (Tex. 1996) (emphasis added). Given this preference for a narrow scope of the discovery rule, the Court will not broaden the perimeters of the discovery rule in this case.

The Van Pelts' inspection report clearly stated, "no access to crawl space." Dkt. No. 19 at 22. And the Van Pelts concede that "[h]ad Plaintiffs known at the time that there was no crawl space, or at best [a] wholly inadequate crawl space from which to view the foundation, the Plaintiffs may have had a reason to inspect the foundation further." Dkt. No. 19 ¶ 8. On the other hand, Guild's appraisal is ambiguous as to the existence of access to the crawl space. *See supra* Section 3.B.ii.c. But even if the Court were to find that the Guild's appraiser confirmed access to crawl space, the appraisal indicates that its "intended user" is Guild, "the lender," and that "[t]he intended use of th[e] appraisal report is for the

lender/client to evaluate the property that is the subject of th[e] appraisal for a mortgage finance transaction."  Dkt. No. 22 at 6.  Moreover, the "FHA Amendatory Clause for Sales Contract," signed by the Van Pelts, demonstrates that they acknowledged that the appraisal and its estimated valuation were not in any way a warranty of the value or condition of the property.  *See id.* at 25.  Moreover, they agreed to purchase the property "as is."  Dkt. No. 22 at 29.

Based on these facts, the Court finds that reasonable minds cannot differ that the Van Pelts should have discovered the lack of access to the crawl space sometime prior to closing.  The defects in the foundation were not "unlikely to be discovered within the prescribed limitations period despite due diligence by the plaintiff" and, thus, were not "inherently undiscoverable."  *K3C*, 204 F. App'x at 462 (citing *HECI*, 982 S.W.2d at 886).  The Van Pelts had time between their inspection report on November 30, 2016 and the closing date on January 17, 2017 to either attempt to examine the crawl space themselves or have another professional do so.  And they allege no impediments by fault of the defendant for doing so.  Finally, the Van Pelts had from closing until the expiration of the limitations period to bring suit, but they did not.

C.    **The Court dismisses the case with prejudice.**

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave when justice so requires."  And the Fifth Circuit has dictated a strong policy of favoring amendment of pleadings after dismissal.  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270–71 (5th Cir. 2010).  But where a plaintiff fails to cure pleading deficiencies highlighted in prior dismissals with leave to amend or where an amendment

would prove futile, a district court is well within its direction to deny leave to amend. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Smyth v. Travis*, No. 4:20-CV-047-SDJ, 2021 WL 972634, at *2 (E.D. Tex. Mar. 16, 2021).

The Court previously highlighted the inadequacy of the Van Pelts' pleadings with respect to the applicability of the discovery rule. Dkt. No. 18 at 6. And the Court granted them leave to amend their complaint. *Id.* at 15. The Van Pelts have tried a second time but have failed again to sustain their burden of showing that the statutes of limitations for their claims have not expired. Therefore, the Court dismisses the case with prejudice.

**4.    Conclusion**

For the foregoing reasons, the Court finds that the discovery rule does not apply and that all of the Van Pelts' claims are time-barred by their respective statutes of limitations. The Court grants Guild's motion to dismiss (Dkt. No. 20) and dismisses the Van Pelts' claims with prejudice. Because this opinion resolves all claims by the Van Pelts against Guild, a judgment will follow.

So ordered on June 7, 2022.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE